UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-595-FDW

| | |
|---|---|
| LOWELL MASON VARNEY,  )<br>  )<br>       **Plaintiff,**  )<br>  )<br>       vs.  )<br>  )<br>FNU MULLISK, et al.,  )<br>  )<br>       **Defendants.**  )<br>_____  ) | **ORDER** |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1).

**I.    BACKGROUND**

Pro se Plaintiff Lowell Mason Varney, a North Carolina inmate incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina, filed this action on October 23, 2013, pursuant to 42 U.S.C. § 1983. In his Complaint, Plaintiff names as Defendants the following individuals, who are alleged to be employees of Lanesboro Correctional Institution at all relevant times: Ken Beaver, Superintendent; Jack McLelland, Assistant Superintendent; "FNU Mullisk," identified as a Captain; Robert Allen, identified as a Unit Manager; and Uris Bennett, identified as a Correction Officer. Plaintiff's action arises out of his claim that in November 2012, Defendant Bennett used excessive force against Plaintiff. More specifically, Plaintiff alleges the following facts:

Plaintiff had surgery on his shoulder on January 31, 2012, following a previous shoulder injury. (Doc. No. 1 at 4). From April 2012 to November 2012, while at Lanesboro, he was in and out of a dislocation restraint sling and Defendant Bennett was, therefore, clearly aware that

1

Plaintiff had a shoulder injury. (Id. at 6). Because of Plaintiff's shoulder, medical staff had ordered Plaintiff to be handcuffed in the front. (Id.). According to Plaintiff, from the time he came to Lanesboro, he and Bennett disliked each other, and they often argued. In October 2012, Defendant Bennett was instructed to handcuff Plaintiff in the front and escort him to medical for an exam. After the exam, Bennett cuffed Plaintiff in the front. Plaintiff and Bennett started arguing. Plaintiff said something that embarrassed Bennett in front of a new female officer. Bennett became angry, grabbed Plaintiff by the left elbow, pulling and raising it upward, and then told Plaintiff that he was going to segregation. Plaintiff pulled away twice, telling Bennett that he was hurting Plaintiff's shoulder. Bennett then grabbed Plaintiff the same way a third time and, stating, "please please pull away again." Another guard named Cline came to intervene and walked with Plaintiff and Bennett to segregation. Plaintiff states that he is five feet seven inches tall, and Defendant Bennett is six feet six inches tall.

Plaintiff states that he was then placed in a two foot by two foot holding cage. (Id. at 7). Defendant Bennett told Plaintiff to put his hands out so Bennett could get his handcuffs back. Plaintiff did not respond, Bennett told him a second time to put his hands out, and Plaintiff again did not respond. Defendant Bennett then told segregation officer Lee to unlock the cage door. Defendant Bennett stepped inside with Plaintiff, and leaned down in Plaintiff's face, saying, "We'll do this my way." Plaintiff states that, at that point, another officer saw what was happening and "stopped" Bennett.

The alleged use of excessive force occurred in November 2012. Plaintiff alleges that he was exiting the shower to go to his cell. Defendants Allen and Bennett were inside Plaintiff's cell pod. Plaintiff alleges that he and Bennett started arguing again as they often did. Plaintiff started to go to Defendant Allen to talk him about something, when Defendant Bennett stepped

2

in between them and said, "You talk to me." Plaintiff responded, "Shut up and get out of the way, bitch." Allen stepped in and told Plaintiff they needed to step outside of the pod and talk. As they were walking, Plaintiff began telling Allen about the hostile history between him and Bennett. Without giving Defendant Allen time to respond in any way, Bennett ordered Plaintiff to submit to handcuffs. Plaintiff answered that Bennett could not cuff him from behind for medical reasons. Before Defendant Allen could react, Defendant Bennett slammed Plaintiff to the floor, ordering him to submit to handcuffs. (Id. at 8). Plaintiff again told Bennett he was required to be cuffed in the front for medical reasons. Before Defendant Allen could react, Defendant Bennett grabbed Plaintiff's left wrist, pulling it behind his back, then forcing it upward, dislocating Plaintiff's left shoulder. Plaintiff was sent to medical, where a nurse told Defendant Mullisk that Plaintiff's left shoulder had been dislocated and that Plaintiff needed to be cuffed in the front and then taken to an emergency room for treatment. Defendant Mullisk left Plaintiff cuffed from behind for about an hour before placing Plaintiff in full restraints for transfer to the emergency room. Plaintiff's shoulder was relocated in the emergency room, and Plaintiff was taken back to Lanesboro, where he was placed in segregation under investigation for fifteen days. Plaintiff was released with no disciplinary write-up against him. Plaintiff alleges that when Plaintiff's shoulder was dislocated by Defendant Bennett, the repairs made in his January 2012 surgery were torn, requiring the need for a second surgery, with the only permanent fix being a complete replacement. Plaintiff alleges that he is now permanently disabled and unable to do the heavy lifting required by his vocation. (Id. at 9). Finally, Plaintiff seeks compensatory damages and injunctive relief. (Id. at 4).

**II.    STANDARD OF REVIEW**

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint

to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III. DISCUSSION**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475

4

U.S. at 320-21.  Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 130 S.Ct. 1175, 1178-79 (2010).  In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 1178-79 (citations omitted).

Plaintiff has sufficiently alleged an Eighth Amendment claim based on excessive force against Defendant Bennett.  Plaintiff fails to state a claim against any other named Defendant.  First, Plaintiff specifically alleges that Defendant Allen had no time to act or intervene before Defendant Bennett yanked Plaintiff's arm up.  Thus, Plaintiff does not have a claim against Defendant Allen for failure to intervene to protect Plaintiff.  As to Defendant Mullisk, the act of leaving Plaintiff cuffed in the back for an hour despite medical's instructions to cuff him in the front does not rise to the level of cruel and unusual punishment under the Eighth Amendment.  Next, Plaintiff alleges no personal involvement whatsoever against Defendants Beaver and McClelland.  Indeed, their names are mentioned nowhere in Plaintiff's allegations.  Thus, these Defendants are also subject to dismissal.

## IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A as to Defendant Bennett, but all of the other Defendants are dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint, (Doc. No. 1), survives initial review under § 1915(e) and 28 U.S.C. § 1915A as to Defendant Bennett. All other Defendants are dismissed from this action.

2. The U.S. Marshal shall attempt to effectuate service on Defendants at the address provided by Plaintiff. Plaintiff states in the Complaint that Defendant Bennett no longer works at Lanesboro. If Plaintiff does not submit a current address for Bennett in the summons, the U.S. Marshal shall use reasonable efforts to locate Defendant Bennett for service.

Signed: June 10, 2014

Frank D. Whitney
Chief United States District Judge