**DISTRICT COURT OF THE UNITED STATES**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:13-cv-595-FDW**

| | | |
|---|---|---|
| LOWELL MASON VARNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| FNU MULLISK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by

Defendant Urias Bennett, (Doc. No. 66).

I.    **BACKGROUND**

A.    **Procedural Background**

Pro se Plaintiff Lowell Varney, a North Carolina inmate currently incarcerated at Maury

Correctional Institution in Maury, North Carolina, filed this action on October 23, 2013, pursuant

to 42 U.S.C. § 1983.  In the Complaint, filed pursuant to 42 U.S.C. § 1983, Plaintiff alleged that

he was subjected to the use of excessive force on November 30, 2012, while he was incarcerated

at Lanesboro Correctional Institution.   (Doc. Nos. 1; 14).  Plaintiff named as Defendants the

following individuals, who were all alleged to be employees of Lanesboro at all relevant times:

(1) Ken Beaver, Superintendent; (2) Jack McLelland, Assistant Superintendent; (3) "FNU

Mullisk," identified as a Captain; (4) Robert Allen, identified as a Unit Manager; and (5) Urias

Bennett, a Correctional Officer.  Plaintiff seeks compensatory damages and injunctive relief.

(Doc. No. 1 at 4; Doc. No. 14 at 3).  The Court has since dismissed all Defendants except for

Defendant Bennett.  (Doc. No. 14).

On June 10, 2016, Defendant Bennett filed the pending summary judgment motion. (Doc. No. 66).  On the same day, this Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court.  (Doc. No. 70).  Plaintiff did not respond to the summary judgment motion, and the time to do so has passed.[1]

**B.      <u>Factual Background</u>**

**1.      <u>The Alleged Excessive Force Incident and the Summary Judgment Evidence</u>**

**a.      <u>Plaintiff's Allegations</u>**

Plaintiff alleges that on November 30, 2012, at 8:00 a.m. he was exiting the shower to go to his cell.  (Doc. No. 1 at 7).  Plaintiff further alleges that Sergeant Robert Allen ("Allen") and Defendant Bennett were inside his cell pod.  (<u>Id.</u>).  Plaintiff contends that he and Bennett began to argue as usual.  (<u>Id.</u>).  Plaintiff alleges that he walked up to Allen, who was already addressing him.  (<u>Id.</u>).  Bennett asked Plaintiff if he was addressing him (Bennett).  (<u>Id.</u>).  Plaintiff said to Bennett, "Shut up . . . and get out of the way, bitch."  (<u>Id.</u>).  Allen stepped in and told Plaintiff that they needed to step outside of the pod and talk.  (<u>Id.</u>).  As they were walking, Plaintiff began telling Allen about the hostile history between Plaintiff and Bennett.  (<u>Id.</u>).  Plaintiff alleges that, before Allen had a chance to respond, Bennett ordered Plaintiff to submit to handcuffs.  (<u>Id.</u>).  Plaintiff alleges that he told Allen he could not be handcuffed from behind due to medical

---

[1]  Because Plaintiff did not file a response to the summary judgment motion, he is deemed to have abandoned his claims.  <u>See</u> <u>Crosby v. Gastonia</u>, 635 F.3d 634, 638 n.3 (4th Cir. 2011).  In an abundance of caution, however, the Court will address the merits of Plaintiff's claims.

reasons.  (Id.).  Plaintiff alleges that, before Allen could react, Bennett then slammed Plaintiff to the floor, ordering him to submit to handcuffs.  (Id. at 8).  Plaintiff again told Allen he was required to be cuffed in the front for medical reasons.  (Id.).  Bennett then grabbed Plaintiff's left wrist, pulling it behind his back, forcing it upward until his left shoulder was dislocated.  (Id.).

Plaintiff was sent to medical, where a nurse told Captain Mullisk that Plaintiff's left shoulder had been dislocated and that he needed to be cuffed in the front and then taken to an emergency room for treatment.  (Id.).  Mullisk left Plaintiff handcuffed from behind for about an hour before placing Plaintiff in full restraints for transfer to the emergency room.  (Id.). Plaintiff's shoulder was relocated in the emergency room, and he was taken back to Lanesboro, where he was placed in segregation under investigation for fifteen days.  (Id.).  Plaintiff was released with no disciplinary write-up against him.  (Id.).

Plaintiff also alleges that when his shoulder was dislocated by Bennett, the repairs made from a previous January 2012 surgery were torn, requiring the need for a second surgery, with the only permanent fix being a complete replacement.  (Id.).  Plaintiff alleges that he is now permanently disabled and unable to do the heavy lifting required by his vocation.  (Id. at 9).

**b.**     **Defendant's Summary Judgment Materials**

In support of the summary judgment motion, Defendant Bennett has submitted the affidavit of Kenneth Beaver, Assistant Superintendent for Custody and Operation at Lanesboro, who reviewed the November 30, 2012, investigation; the affidavit of Correctional Officer Dirk Berghmans, an officer involved in the incident and a non-defendant witness; the affidavit of Defendant Bennett; and the affidavit of Paula Smith, M.D. who reviewed the medical records and video footage regarding the November 30, 2012, use-of-force incident.  See (Doc. No. 68-1: Aff. of Kenneth Beaver; Doc. No. 68-2: Aff. of Dirk Berghmans; Doc. No. 68-3: Aff. of Urias

Bennett; Doc. No. 68-4: Aff. of Paula Smith).  Attached to the affidavits are the November 30, 2012, use-of-force incident report, the relevant policies for the North Carolina Department of Public Safety ("NCDPS") and Lanesboro Correctional Institution where the event occurred, Plaintiff's disciplinary history, video footage from the incident on November 30, 2012, photographs, and medical records.  See (Doc. No. 68-1 & Exs. A, B, C, D, E, F; Doc. Nos. 68-4; 68-5; 68-6).  Defendant's evidence on summary judgment shows the following:

**1.  The incident of alleged use of excessive force by Bennett on November 30, 2012**

At all relevant times, Plaintiff was a prisoner in the custody of the NCDPS housed at Lanesboro.  (Doc. No. 68-1 at ¶ 13).  He was serving a sentence of more than twelve years for a second-degree sexual offense.  (Id.).  Before November 30, 2012, Plaintiff had received disciplinary infractions for disobeying orders, using profanity, assaulting staff with weapon, assaulting staff by throwing liquid, weapon possession, and self-injury.  (Id. at ¶ 1 & Ex. D; Doc. No. 68-2 at ¶ 6; Doc. No. 68-3 at ¶ 5).

At around 8:45 a.m. on November 30, 2012, Bennett, Allen, and Berghmans entered Union C-Pod to pass on information about the lockdown procedures.  (Doc. No. 68-2 at ¶ 7; Doc. No. 68-3 at ¶ 6).  Both Defendant Bennett and officer Berghmans submitted affidavits attesting to what happened once they entered the pod.  Plaintiff became belligerent and loud inside the pod.  (Doc. No. 68-2 at ¶ 8; Doc. No. 68-3 at ¶ 7).  Plaintiff called Bennett a "bitch" several times and made sexually inappropriate comments.  (Doc. No. 68-3 at ¶ 8).  Allen and Bennett asked Plaintiff to step out of the pod.  (Doc. No. 68-2 at ¶ 8; Doc. No. 68-3 at ¶ 9).

Upon exiting the pod, Plaintiff continued to use profanity and abusive language towards Bennett.  (Doc. No. 68-2 at ¶ 9; Doc. No. 68-3 at ¶ 11).  Plaintiff called Bennett all kinds of names.  (Doc. No. 68-2 at ¶ 10).  Plaintiff put his finger in Bennett's face and called him a

"bitch" again, and then went back into the pod. (Doc. No. 68-3 at ¶ 12). Bennett instructed Plaintiff to place his hands behind his back to be restrained. (Doc. No. 68-2 at ¶ 11; Doc. No. 68-3 at ¶ 14). At all relevant times, the custodial staff were not notified of any medical restrictions that required Plaintiff to be handcuffed in the front. (Doc. No. 68-2 at ¶ 12; Doc. No. 68-3 at ¶ 14). Plaintiff initially complied, placing his hands behind his back. (Doc. No. 68-2 at ¶ 13; Doc. No. 68-3 at ¶ 15). However, as Bennett was attempting to place restraints on Plaintiff, Plaintiff became defiant and combative. (Doc. No. 68-2 at ¶ 14; Doc. No. 68-3 at ¶ 16). Plaintiff stated, "Hell no, you ain't cuffing me." (Doc. No. 68-2 at ¶ 15; Doc. No. 68-3 at ¶ 17). Plaintiff then jerked away from Bennett. (Doc. No. 68-2 at ¶ 16; Doc. No. 68-3 at ¶ 18). Plaintiff's conduct jeopardized the safety of staff and himself. (Doc. No. 68-2 at ¶ 16; Doc. No. 68-3 at ¶ 19). Bennett then placed the open palm of his right hand on Plaintiff's neck, and placed his left hand on Plaintiff's left arm. (Doc. No. 68-2 at ¶ 18; Doc. No. 68-3 at ¶ 20). Plaintiff was then lowered to the floor. (Doc. No. 68-2 at ¶ 18; Doc. No. 68-3 at ¶ 20). Plaintiff ended up sitting on the floor and gripping his left wrist. (Doc. No. 68-2 at ¶ 19; Doc. No. 68-3 at ¶ 24). Plaintiff continued to be combative and defiant. (Doc. No. 68-2 at ¶ 22).

Defendant's summary judgment evidence shows that Plaintiff has an extensive history of dislocating his shoulder and popping it back into place. (Doc. No. 68-1 at ¶ 28; Doc. No. 68-2 at ¶ 27; Doc. No. 68-3 at ¶ 30). After Plaintiff was on the floor, he appeared to be pulling his arm away from his shoulder in an attempt to pull it out of place. (Doc. No. 68-2 at ¶ 23; Doc. No. 68-3 at ¶ 25). Bennett continued to instruct Plaintiff to place his hands behind his back. (Doc. No. 68-2 at ¶ 24; Doc. No. 68-3 at ¶ 26). Plaintiff refused the directive until Allen convinced him to comply with the directive. (Doc. No. 68-2 at ¶ 25; Doc. No. 68-3 at ¶ 27). Plaintiff was restrained and escorted to medical for evaluation. (Doc. No. 68-2 at ¶ 26; Doc. No. 68-3 at ¶ 28).

At around 8:50 a.m., Registered Nurse Michelle Shope assessed Plaintiff. (Doc. No. 68-1 at ¶ 33 & Ex. E). Plaintiff complained of left shoulder pain and claimed his shoulder was dislocated. (Id.). Nurse Shope noted no abrasions, lacerations, or bruises, with no distress or deformity. (Id.). Photographs were taken. Plaintiff was taken to Carolinas Medical Center-Union for additional medical treatment. (Doc. No. 68-1 at ¶ 34). Plaintiff was treated and returned to Lanesboro that same day. (Id.). Plaintiff refused to provide a written statement after the incident. (Id. at ¶ 16).

### 2. Medical evidence related to Plaintiff's left shoulder

Dr. Smith is a licensed medical physician. (Doc. No. 68-4 at ¶ 2). Since March 2001, Dr. Smith has been the Chief of Health Services/Medical Director for the NCDPS. (Id.). Dr. Smith reviewed the November 30, 2012, use-of-force video involving Plaintiff and Bennett. (Id. at ¶¶ 4-5). Dr. Smith opined that the alleged left shoulder injuries are not supported by the video footage, mechanism of restraint, and the minimal force used to restrain Plaintiff. (Id. at ¶ 7).

Dr. Smith also reviewed the medical records related to Plaintiff's left shoulder condition. (Id. at ¶ 8 & Exs. A-B). The medical records and video footage did not support Plaintiff's allegations that his left shoulder condition was dislocated by Bennett's use of force. (Id. at ¶ 9). The pre-existing medical history revealed that Plaintiff underwent left shoulder surgery on January 31, 2012. (Id. at ¶ 11 & Exs. A-B). The surgery did not appear to resolve Plaintiff's chronic, left shoulder condition. (Id.). Plaintiff experienced at least six dislocations before the November 30, 2012, incident. (Id.). Plaintiff has an extensive medical history of dislocating his left shoulder and popping it back into place. (Id. at ¶ 12 & Exs. A-B). Based on Dr. Smith's review of the medical records, in her opinion the medical evidence did not support Plaintiff's allegations that the repairs made in Plaintiff's January 2012 left shoulder surgery were torn,

requiring the need for a second surgery, or that he needed a left shoulder replacement as a result of the November 30, 2012, use-of-force incident. (Id. at ¶ 13 & Exs. A-B). Dr. Smith further opined that the medical evidence did not support that Plaintiff was permanently disabled as a result of the November 30, 2012, use-of-force incident. (Id. at ¶ 14 & Exs. A-B). Finally, there was no medical evidence to support that Plaintiff had any physical restrictions that required him to be restrained or handcuffed in the front on November 30, 2012. (Id. at ¶ 15 & Exs. A-B).

### 3. November 30, 2012, use-of-force incident investigation and determination

Lanesboro Assistant Superintendent Kenneth Beaver is responsible for overseeing all custodial operations and staff in his supervisory chain of command to ensure compliance with Departmental policies. (Doc. No. 68-1 at ¶ 6). This includes reviewing use-of-force incidents at Lanesboro following the investigation. (Id. at ¶¶ 7-8 & Exs. A-B). Specifically, Beaver reviewed the incident report related to the alleged November 30, 2012, use-of-force investigation involving Plaintiff and Bennett. (Id. at ¶ 12 & Ex. C). The use-of-force investigation was also reviewed by Superintendent Lawrence Parsons, Jr., and Program Administrator Wendell Hargrave as the designee for the Regional Director. (Id. at ¶¶ 46-48).

After the use-of-force investigation, NCDPS management determined that the force used by Bennett on November 30, 2012, against Plaintiff was done in accordance with NCDPS policies and procedures. (Doc. No. 68-1 at ¶¶ 41-48). The investigation found that Bennett used "hands on" force, which is within the NCDPS policies and procedures for use of force. (Doc. No. 68-1 at ¶ 38 & Ex. A). Beaver determined that any force used by Bennett on November 30, 2012, against Plaintiff was an appropriate amount of force to gain control, restrain Plaintiff, and prevent injury to staff, given Plaintiff's non-compliant, aggressive, and combative behavior. (Doc. No. 68-1 at ¶ 42). It was further determined that any force used by Bennett was reasonable

and necessary to prevent harm to staff and to ensure that he complied with prison policies. (Id. at ¶¶ 43-45).

On December 30, 2012, Lanesboro Superintendent Parsons also determined that appropriate force was used to control and restrain Plaintiff. (Doc. No. 68-1 at ¶ 46 & Ex. C). Parsons also determined that Officer Bennett followed proper procedure. (Id.). On February 6, 2013, Hargave also reviewed the investigation report for the November 30, 2012, incident and concurred that the force used by Officer Bennett against Plaintiff was reasonable and necessary. (Doc. No. 68-1 at ¶ 48). Hargave further determined that only the minimum amount of force was applied in order to gain control and prevent the risk of serious injury or harm to staff or Plaintiff. (Id.). It was further determined that, if Plaintiff did sustain any injuries, they appeared to be self-inflicted and not a result of the minimum amount of force that was applied. (Id. at ¶ 48). It was determined that Bennett, Allen, and Berghmans acted in accordance with NCDPS policies and policies, and in the course and scope of their job duties. (Id. at ¶ 49).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the

movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

## III.    DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim,

an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

For the following reasons, Defendant Bennett is entitled to summary judgment as to Plaintiff's claim against him for excessive force. First, to the extent that Plaintiff has sued Defendant Bennett in his official capacity, the suit is against the NCDPS and the State of North Carolina. However, neither the State nor it agencies constitute "persons" subject to suit under Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003).

Next, to the extent that Defendant Bennett is being sued in his individual capacity, Defendant's evidence on summary judgment, which Plaintiff has not disputed, shows that the force used by Defendant was applied in a good-faith effort to restore order and discipline, and it

was not done maliciously and sadistically for the very purpose of causing harm.[2]  As to

Plaintiff's allegation that he should have been handcuffed in the front, the evidence further

shows that the correctional officers were not aware of any physical restrictions that prevented

Plaintiff from being handcuffed in the back on November 30, 2012, nor was there any medical

documentation to support that Plaintiff had any physical restrictions requiring him to be

restrained or handcuffed in the front on November 30, 2012.

The record further shows that the medical evidence and video footage does not support

Plaintiff's contention that his left shoulder was dislocated by Bennett's use of force.[3]  Rather, as

noted, Plaintiff has an extensive medical history of dislocating his left shoulder and popping it

back into place.  Following his surgery on January 31, 2012, Plaintiff experienced at least six

dislocations before the incident on November 30, 2012.  The substantial medical evidence also

does not support Plaintiff's contention that the repairs made in his January 2012 left shoulder

---

[2]  The Court notes that, as to any legal conclusions made in Defendant's supporting affidavits with regard to use of force, those legal conclusions have no impact on any legal determination by this Court as to whether Defendant Bennett used excessive force.  See United States v. Perkins, 470 F.3d 150, 157 (4th Cir. 2006) (where an arrestee alleged that officers used excessive force, the testimony of the investigating officers who were not present when the incident occurred, and who testified as to the reasonableness of the officer who used the force, did not satisfy the personal knowledge requirement for the admissibility of lay opinion testimony).  Rather, the Court is basing its conclusion on the factual statements made in the affidavits of Dirk Berghmans, an officer involved in the incident and a non-defendant witness, and Defendant Bennett as to what occurred just before and during the use-of-force incident.

[3]  As part of the evidence on summary judgment, Defendant has submitted video footage of the incident.  (Doc. No. 68-1 at ¶ 35 & Ex. F).  The video footage shows that the use-of-force incident lasted about one minute, from 8:44:15.07 a.m. to 8:45.08.24 a.m.  (Id. at ¶ 36). Defendant contends that the video footage supports a finding that minimal force was used to restore order and that Plaintiff's left shoulder was not dislocated.  Although the Court agrees with Defendant that the video footage shows Plaintiff without any visible, physical injuries as he was being led away in handcuffs after the incident, the video footage of the use-of-force incident itself is not very useful on the excessive force issue.  The video footage was shot from a distance, and it simply does not show Plaintiff or Bennett very clearly.

surgery were torn, requiring the need for a second surgery, or that he needed a left shoulder replacement as a result of the incident on November 30, 2012.  Finally, the medical evidence simply does not support Plaintiff's allegation in his Complaint that he was "permanently disabled" as a result of the incident on November 30, 2012.

In sum, the Court finds that Plaintiff has not raised a genuine dispute as to whether Defendant Bennett—the sole remaining Defendant in this action—used excessive force against Plaintiff during the incident on November 30, 2012.  Thus, Defendant Bennett is entitled to summary judgment on Plaintiff's excessive force claim.[4]

## IV.    CONCLUSION

For the reasons stated herein, the Court will grant summary judgment to Defendant Bennett and dismiss this action with prejudice.

**IT IS, THEREFORE, ORDERED** that:

1.    Defendant Bennett's Motion for Summary Judgment, (Doc. No. 66), is **GRANTED**.

2.    The Clerk is directed to terminate this action.

Frank D. Whitney
Chief United States District Judge

---

[4]  Defendant raised qualified immunity as a defense to Plaintiff's excessive force claim.  Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendant is entitled to qualified immunity.